[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 30, 2008
THOMAS K. KAHN
CLERK

No. 07-10090
Non-Argument Calendar

_____

D. C. Docket No. 06-00083-CR-3-MCR

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KENT E. HOVIND,

Defendant-Appellant.

_____

No. 07-10502
Non-Argument Calendar

_____

D. C. Docket No. 06-00083-CR-3-MCR

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KENT E. HOVIND,
JO D. HOVIND,

                                                        Defendants-Appellants.


_____

Appeals from the United States District Court
for the Northern District of Florida
_____

**(December 30, 2008)**

Before ANDERSON, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

Kent Hovind appeals his convictions and sentences for failing to collect and pay employment withholding taxes, obstructing tax laws, and structuring transactions to avoid financial reporting laws, 18 U.S.C. § 2; 26 U.S.C. §§ 7202, 7212(a); 31 U.S.C. § 5324(a)(3), (d); 31 C.F.R. § 103.11, and his wife, Jo Hovind, appeals her convictions and sentences for structuring transactions to avoid reporting laws, 18 U.S.C. § 2; 31 U.S.C. § 5324(a)(3), (d); 31 C.F.R. § 103.11. Kent and Jo challenge the sufficiency of their indictments and the evidence. Kent also challenges the calculation of the loss amount and the imposition of restitution, and Jo challenges the order of forfeiture. We affirm.

2

# I. BACKGROUND

The Hovinds owned and operated Creation Science Evangelism Enterprises, which sold videos and literature, provided lecture services, and hosted live debates. Between 1999 and 2003, the Hovinds withdrew from AmSouth Bank over one and a half million dollars in increments less than $10,000 to avoid federal filing requirements. Company documents and records of the transactions established that Jo controlled the finances of Evangelism Enterprises and controlled most of the checks that were cashed. Kent, who oversaw payroll and related federal tax obligations, failed to withhold or pay quarterly federal withholding taxes or file related documents with the Internal Revenue Service between 2001 and 2003.

The Hovinds were charged in a 58-count indictment. Kent was charged in the first twelve counts of the indictment for willfully failing to deduct and pay federal income and withholding taxes for employees of Evangelism Enterprises. 26 U.S.C. § 7202. The Hovinds were charged in the next 45 counts for structuring cash withdrawals to avoid financial reporting requirements. 18 U.S.C. § 2; 31 U.S.C. §§ 5313(a), 5324(a)(3), 5324(d); 31 C.F.R. § 103.11. Kent was charged in the last count of the indictment for obstructing the administration of internal revenue laws. 26 U.S.C. § 7212(a). The indictment also included a provision for forfeiture by the Hovinds of "any and all property, real and personal, involved in"

3

the financial reporting crimes "and any property traceable thereto" and, if that specific property could not be recovered, for "forfeiture of any other property of [the Hovinds] up to the value of the . . . property." Approximately two months after the court-imposed filing deadline, the Hovinds moved to dismiss their indictments. The district court denied the motions as untimely and without merit.

After the government rested its case at trial, the Hovinds moved for an acquittal on each count of the indictment. Defense counsel argued that the government was required to prove for each count of structuring that the transaction equaled or exceeded $10,000 and, because the evidence established that each transaction was less than that threshold, the Hovinds were entitled to dismissal of those counts. The government responded that it had a "fundamental disagreement" with the Hovinds' interpretation of the structuring statutes and argued that structuring necessarily requires a transaction under $10,000. The district court "agree[d] with the government" that the Hovinds' interpretation of structuring was contrary to the statutes and denied the Hovinds' motion. The court later referred to its decision on the motion and instructed defense counsel that they would "not be permitted" to argue their interpretation of the structuring statutes. After discussion of the issue, defense counsel explained that they intended to argue that the government did not prove that the Hovinds structured each transaction to evade

4

reporting requirements.

The Hovinds were found guilty of all charges. The jury found that $430,400 was involved in or traceable to the financial reporting crimes. The jury entered a special verdict against the Hovinds for the forfeiture of real and personal property attributable to the reporting crimes.

Separate presentence investigation reports were prepared for Kent and Jo. Kent's report paired the first 12 counts of the indictment into one group and the next 44 counts into a second group. United States Sentencing Guidelines § 3D1.2(d) (Nov. 2001). The report listed the offense level applicable to each group and selected the second group, which had the highest offense level of 22. Id. §§ 2B1.1(b)(1); 3D1.3(b); 2S1.3. The base offense level was increased by 2 levels because the offense was part of a pattern of unlawful activity that involved more than $100,000 in a 12-month period, id. § 2S1.3(b)(2), and increased another 6 levels for Kent's aggravating role in the crimes. Id. §§ 3B1.1(a); 3C1.1. With a criminal history of I, the report provided a sentencing range between 97 and 121 months of imprisonment. The report calculated a tax liability, under the first twelve counts of the indictment, of $604,874.87. Id. § 5E1.1(a)(2).

Jo's presentence report listed a base offense level of 22. Id. §§ 2B1.1(b)(1); 2S1.3. The report decreased the base level by 16 levels because Jo did not act with

5

reckless disregard of the source of the funds and because the funds were the proceeds of lawful activity and were to be used for a lawful purpose, id. § 2D1.3(b)(2). With a criminal history of I, the report provided a sentencing range between 0 and 6 months of imprisonment.

Before Jo's sentencing hearing, the government moved to forfeit substitute property and requested the court substitute ten parcels of real property and a bank account belonging to Jo and Kent to satisfy the $430,400 judgment. 21 U.S.C. § 853(p). The government attached to the motion an affidavit from Special Agent Charles Evans of the Internal Revenue Service. The affidavit stated that the agency could not find the $430,400 because the Hovinds had transferred the assets to a third party, expended the assets on business-related expenses, and removed the assets from the jurisdiction of the district court.

The district court found that the Hovinds had disposed of the assets subject to forfeiture and granted the motion of the government to substitute property. The district court entered a final order of forfeiture against Jo and sentenced her to one year and one day of imprisonment. The court sentenced Kent to 120 months of imprisonment and to supervised release of 3 years, and ordered Kent to pay restitution of $604,874.87.

## II. STANDARDS OF REVIEW

We apply three standards of review in this appeal. We review <u>de novo</u> the sufficiency of an indictment. <u>United States v. Bobo</u>, 344 F.3d 1076, 1082–83 (11th Cir. 2003). We review <u>de novo</u> challenges to the sufficiency of the evidence and view the evidence in the light most favorable to the government. <u>United States v. Futrell</u>, 209 F.3d 1286, 1288 (11th Cir. 2000). When an issue is not preserved for appeal, our review is for plain error. <u>See</u> <u>United States v. Rubio</u>, 317 F.3d 1240, 1241 n.1 (11th Cir. 2003). We review <u>de novo</u> jury instructions to determine "'whether they misstate the law or mislead the jury to the prejudice of the objecting party.'" <u>United States v. Bender</u>, 290 F.3d 1279, 1284 (11th Cir. 2002) (quoting <u>United States v. Grigsby</u>, 111 F.3d 806, 814 (11th Cir. 1997)). We review for clear error the calculation of the amount of loss. <u>United States v. Machado</u>, 333 F.3d 1225, 1227 (11th Cir. 2003). We review <u>de novo</u> the legality of the orders of restitution and of forfeiture. <u>United States v. Foley</u>, 508 F.3d 627, 632 (11th Cir. 2007) (citing <u>United States v. Hasson</u>, 333 F.3d 1264, 1275 (11th Cir. 2003)).

## III. DISCUSSION

Kent and Jo Hovind raise multiple issues for our consideration. Their arguments fail. We address each argument in turn.

*A. The Hovinds Indictments Were Sufficient.*

It is a well-established principle that "'[t]he sufficiency of a criminal indictment is determined from its face.'" United States v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006) (quoting United States v. Salman, 378 F.3d 1266, 1268 (11th Cir. 2004)). "For an indictment to be valid, it must 'contain the elements of the offense intended to be charged, and sufficiently apprise the defendant of what he must be prepared to meet.'" United States v. Bobo, 344 F.3d 1076, 1083 (11th Cir. 2003) (quoting Russell v. United States, 369 U.S. 749, 763, 82 S. Ct. 1038, 1047 (1962)). When the indictment tracks the language of the statute, "'it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged.'" Id. (quoting Russell, 369 U.S. at 765, 82 S. Ct. at 1048).

The indictment sufficiently alleged Kent's tax crimes. Kent complains that his indictment omitted what part of Title 26 required him to collect and pay federal withholding taxes for employees of Evangelism Enterprises and failed to define how he acted "willfully," but these arguments fail. Kent was adequately notified of his offenses to prepare a defense and to plead double jeopardy in any future prosecution for the same offense. The indictment alleged that Kent violated Section 7202 of Title 26 and described Kent's responsibilities under the tax laws,

8

explained Kent's failure to withhold and pay quarterly federal withholding taxes, and stated the taxable periods in which Kent incurred a tax liability. The government was not required to include specific statutory authority for Kent's tax liability or to allege facts regarding Kent's willfulness. See United States v. Chisum, 502 F.3d 1237, 1244–45 (10th Cir. 2007) (affirming as sufficient an indictment for tax evasion that omitted "what part of Title 26 imposed the tax that was being evaded or defeated"). Cf. Huff v. United States, 273 F.2d 56, 58–59 (5th Cir. 1959) (indictment for smuggling goods into the United States without an invoice was sufficient even without a reference to the statute that required invoicing or a factual description of the crime).

The indictment also sufficiently alleged the Hovinds' structuring crimes. The Hovinds argue that each of the structuring counts fails to state an offense because each count fails to allege that the Hovinds structured an amount that exceeded $10,000 and, without this allegation, the indictments were defective. The Hovinds contend that the language used in the financial reporting statute did not suggest that structuring could involve a cash transaction of less than $10,000. These arguments ignore the plain language of the statute and our interpretation of it. A person is prohibited from "structur[ing] . . . any transaction" to "evad[e] the reporting requirements[,]" 31 U.S.C. § 5324(a)(3), of domestic financial

9

institutions.  Those reporting requirements are activated upon the "payment, receipt, or transfer of United States coins or currency[,]" 31 U.S.C. § 5313(a), "of more than $10,000."  31 C.F.R. § 103.22(b).  In other words, section 5324(a)(3) forbids a person from transacting in amounts less than $10,000 to avoid detection by and reporting of the transactions by a financial institution.  United States v. Phipps, 81 F.3d 1056, 1060–61 (11th Cir. 1996).  That interpretation is also consistent with the intent of Congress for the structuring provision to "operate[] 'without regard for whether an individual transaction is, itself, reportable . . . .'"  Id. at 1061 (quoting S. Rep. No. 433, 99th Cong., 2d Sess. 22 (1986)).  Because a cash transaction does not have to equal or exceed $10,000 to constitute a structuring offense, the district court did not err by denying the Hovinds' motion to dismiss.

Kent's indictment for obstructing administration of the tax laws also states an offense.  Kent argues for the first time on appeal that the charge failed to state an offense because none of the acts listed, which included filing complaints against agents of the Internal Revenue Service and instituting bankruptcy and other legal proceedings against those agents, were corrupt.  His argument misapprehends the definition of "corruptly."  Acts that might otherwise be legal become corrupt and obstructionist when they are used to "thwart the efforts of government officers and

10

employees in executing the laws enacted by Congress." United States v. Popkin, 943 F.2d 1535, 1540 (11th Cir. 1991). The district court did not err, much less plainly err, by denying Kent's motion to dismiss.

*B. The Government Introduced Sufficient Evidence To Support the Hovinds' Convictions.*

The Hovinds challenge their convictions on three grounds. First, Kent argues that his failure to withhold taxes was not willful. Second, the Hovinds argue that they did not know that section 5324(a)(3) prohibited a transaction of less than $10,000. Third, Kent argues that legal actions he instituted before and during the investigation of the Internal Revenue Service were not corrupt and cannot support his conviction for obstruction of tax laws.

1. Kent Refused To Comply With Laws To Collect And Pay Federal Withholding Taxes.

Sufficient evidence establishes that Kent failed to collect or pay withholding taxes. Kent argues that the government failed to prove that he acted willfully absent evidence that Kent knew of the specific statutes that required him to collect and pay withholding taxes, but that argument fails. In Cheek v. United States, 498 U.S. 192, 201, 111 S. Ct. 604, 610 (1991), the Supreme Court explained in a hypothetical that the government would satisfy the "knowledge component of the willfulness requirement" if it introduced evidence that the defendant knew of the

11

"duty purportedly imposed" by the tax laws, not that he knew which specific provision created that duty. Id. at 201–02, 111 S. Ct. at 610–11. When a defendant knows of facts constituting an offense, he has "acted with the requisite willfulness to violate the law." United States v. Fields, 500 F.3d 1327, 1332 (11th Cir. 2007) (citing Bryan v. United States, 498 U.S. 184, 196, 118 S. Ct. 1939, 1947 (1998)).

The government proved that Kent knew the tax laws required the collection and payment of withholding taxes, but he refused to comply. Employees of Evangelism Enterprises, peers, and legal counsel testified that Kent disputed the authority of the Internal Revenue Service based on the separation of the church and state, debated the interpretation and application of the withholding requirements, and intentionally characterized Evangelism Enterprises as a "church" and his employees as "missionaries" to avoid tax obligations. Kent had opined to attorney David Gibbs that he was "smarter" than other church officials who had forfeited real property after they refused to collect or pay withholding taxes. Although Kent argued at trial that he was ignorant of the law and the Revenue Service failed to identify a law that required him to collect and pay withholding taxes, the jury was entitled to find that Kent knew about and deliberately violated the tax laws. See United States v. Lankford, 955 F.2d 1545, 1550 (11th Cir. 1992).

2. The Hovinds Structured Transactions To Avoid Reporting Requirements.

The government also proved that the Hovinds structured their cash withdrawals to avoid federal reporting requirements. Although the Hovinds challenge the validity of their convictions on the ground that the statute does not penalize transactions below $10,000, this interpretation does not comport with the language of the statute. Congress enacted Section 5324(a)(3) to penalize "any transaction" structured to "avoid triggering [a] bank's duty to file a [Currency Transaction Report] in the first place." Phipps, 81 F.3d at 1059–60. By its plain language, the statute prohibits transactions of less than $10,000 that are intended to evade reporting requirements. Id. at 1060–61. That reading comports with the regulations that define structuring to penalize cash transactions designed "in any manner, . . . including transactions . . . below $10,000 . . . for the purpose of evading the reporting requirements . . . ." 31 C.F.R. § 103.11(gg).

Evidence established that Kent and Jo Hovind structured cash transactions with knowledge of, and the intent to avoid, reporting of those transactions by AmSouth Bank. See United States v. MacPherson, 424 F.3d 183, 189 (2d Cir. 2005); United States v. Cassano, 371 F.3d 868, 878 (7th Cir. 2004). A former employee of Evangelism Enterprises, Brian Popp, testified that Kent knew of and complained about the bank reporting requirements and that Jo, often at Kent's

13

direction, regularly obtained cash to pay employees of the organization. Other employees and associates of Kent testified that the Hovinds openly disputed the validity of the tax laws. Various documents established that Jo withdrew cash in increments of $9500 and $9600 from AmSouth Bank as often as four or five times a month, for a total of 45 transactions between July 2001 and August 2002. Viewing this evidence in a light favorable to the prosecution, the jury was entitled to find that Kent and Jo knew of the reporting requirements and structured cash transactions in amounts less than $10,000 to prevent AmSouth Bank from reporting the transactions. See United States v. Williams, 121 F.3d 615, 621 (11th Cir. 1997) (willfulness "requires proof of an intentional violation of a known legal duty"); In re Jacobs, 490 F.3d 913, 925 (11th Cir. 2007) ("'the conduct requirement is satisfied where a debtor engages in affirmative acts to avoid payment or collection of taxes'" (quoting In re Fretz, 244 F.3d 1323, 1329 (11th Cir. 2001))).

3. Kent Obstructed the Investigation of His Tax Offenses.

Substantial evidence established that Kent obstructed investigation of his tax offenses. A person is guilty of obstructing the administration of tax laws if he "corruptly" acts to "intimidate or impede any officer" or to "obstruct[], impede, or endeavors to obstruct or impede, the due administration" of the tax laws. Kent

14

filed complaints and sued agents of the Internal Revenue Service and instituted legal proceedings to circumvent the lawful seizure of his assets. This evidence supports the finding of the jury that Kent intended to impede agents of the Revenue Service in their efforts to investigate and prosecute Kent's violations of the tax laws.

*C. The District Court Did Not Err By Adding a Sentence to the Jury Instruction.*

A district court is required to inform counsel before closing arguments how it intends to rule on proposed jury instructions. Fed. R. Crim. P. 30(b). We require substantial compliance with Rule 30 and reverse for a violation of the rule only if the defendant establishes that he was prejudiced by the change in a jury instruction. United States v. White, 27 F.3d 1531, 1538 (11th Cir. 1990). Prejudice exists only if the defendant establishes that the modification of the instruction was substantial and repudiated or rendered ineffective his arguments. Id.

The Hovinds were not prejudiced by the change to the jury instruction. The district court did not substantially modify the instruction on structuring. In his closing argument, Kent Hovind used the original jury instruction in a manner that suggested that the government was required to prove that structuring required a cash transaction that equaled or exceeded $10,000. That jury instruction read,

> To structure a transaction means to deposit or withdraw or otherwise participate in a transfer of a total of more than $10,000 in cash or

15

currency by or through a financial institution or bank by setting up or arranging a series of separate transactions, each involving $10,000 or less individually, thereby intentionally evading the currency reporting requirements that would have applied if the transaction had not been so structured.

The district court added the last sentence of the regulation that defines structuring: "The transaction or transactions need not exceed the $10,000 reporting threshold at any single financial institution on any single day in order to constitute structuring . . . ." 31 C.F.R. § 103.11(gg). The district court was entitled to revise the jury instruction in this manner. See Bender, 290 F.3d at 1284 ("We give the district court wide discretion as to the style and wording employed in the instructions, ascertaining that the instructions accurately reflect the law.").

### D. The Hovinds Were Correctly Sentenced.

The Hovinds challenge their sentences on three grounds. First, Kent challenges the calculation of the tax loss. Second, Kent challenges his restitution. Third, Jo challenges the forfeiture of substitute property. These arguments fail.

Kent argues that the district court violated his rights under the Sixth Amendment when it calculated the tax loss attributable to his tax evasion charges, but the tax loss played no role in Kent's sentence. The district court used the offense level for Kent's structuring charges instead of the offense level for his tax charges to calculate Kent's sentence. Because the guideline range and sentence

16

was the same regardless of the amount of tax loss, any error in the calculation was harmless. See United States v. Tampas, 493 F.3d 1291, 1305 (11th Cir. 2007).

Kent challenges his restitution on two grounds both of which fail. First, Kent argues that restitution was not a penalty for his crimes, but his argument ignores that the district court ordered restitution as a condition of Kent's supervised release. See 18 U.S.C. §§ 3563, 3583(d). Second, Kent argues, without citation to any authority, that the Internal Revenue Service cannot be a victim, but Kent's argument overlooks that the Revenue Service, as the agency responsible for collecting taxes, is the only possible victim of tax evasion. Cf. Balogun v. U.S. Att'y Gen., 425 F.3d 1356, 1361 (11th Cir. 2005) (finding the government a "victim" of tax evasion under immigration law). The district court did not err by ordering Kent to pay restitution.

Jo presents two challenges to the forfeiture of substitute property both of which fail. First, Jo argues that the amount of forfeiture was excessive and unconstitutional because the money was obtained legally and expended for business obligations of Evangelism Enterprises, but we disagree. The jury was entitled to find that the Hovinds structured transactions to avoid financial reporting laws and hide assets from the Revenue Service and a forfeiture of $430,400 was warranted to punish the Hovinds for their crimes. See Hasson, 333 F.3d at

17

1279–80. Second, Jo argues that the district court erred by substituting property because the $430,300 could be traced to business-related expenses, but we again disagree. The district court was entitled to order the forfeiture of substitute property when the original property was "transferred . . . or deposited with[] a third party." 21 U.S.C. § 853(p)(1)(B). The district court did not err by ordering a substitution of forfeiture property.

## IV. CONCLUSION

The convictions and sentences of the Hovinds are **AFFIRMED.**