[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15388
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cr-20152-FAM-5

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JULIAN BREAL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 9, 2014)

Before WILLIAM PRYOR, JULIE CARNES, and FAY, Circuit Judges.

PER CURIAM:

Julian Breal challenges his convictions and sentence of imprisonment for 50 years for conspiracy to commit hostage taking, 18 U.S.C. § 1203(a), hostage taking, *id*., kidnapping, *id*. § 1201(a)(1), carjacking, *id*. §§ 2119, 1365, and possession of a firearm in furtherance of a crime of violence, *id*. §§ 924(c)(1)(a). We affirm.

## I. BACKGROUND

Breal and five others conspired to rob a drug dealer. Breal provided information about the victim, his assets, and his movements, so that the other conspirators, none of whom was known to the victim, could execute the robbery. The other conspirators agreed that Breal would receive a share of the proceeds of their crime.

The conspirators' initial plan was to intercept the victim on his return from a fishing trip, but the conspirators altered their plan when Breal learned that the victim had sold his fishing boat. They decided instead to rob the victim's house. Breal provided the address and agreed to serve as lookout. But there were too many people at the victim's house, so the conspirators aborted the robbery.

Breal's coconspirators later abducted the victim at gunpoint as he was exiting a bar. They drove to a coconspirator's house, where they tortured the victim and demanded names of people they could call to demand ransom. Breal was not present, but after the victim provided several names, one of the coconspirators

2

called Breal, told Breal "we got him," and asked Breal to confirm the names and phone numbers as potential targets for ransom money. Breal confirmed the information. The coconspirators then called the victim's brother, tortured the victim so that he screamed over the phone, and demanded ransom.

About two months later, the police interviewed Breal. After he waived his right to counsel and his right to remain silent, Breal confessed to his role in the crimes. All of the coconspirators pleaded guilty, save for Breal. He was convicted following a jury trial.

## II. STANDARDS OF REVIEW

This appeal is governed by three standards of review. We review a motion to suppress as a mixed question of law and fact: we review questions of law *de novo*, and we review findings of fact for clear error. *United States v. Delancy*, 502 F.3d 1297, 1304 (11th Cir. 2007). We review motions to dismiss an indictment for abuse of discretion, but review the legal sufficiency of the allegations in an indictment *de novo*. *United States v. York*, 428 F.3d 1325, 1332 n.8 (11th Cir. 2005). When a defendant raises an objection for the first time on appeal, we review for plain error. *United States v. Madden*, 733 F.3d 1314, 1320–21 (11th Cir. 2013).

## III. DISCUSSION

We divide our discussion in five parts. First, we explain that the district court did not err when it denied Breal's motion to suppress. Second, we explain

3

that the district court did not err when it refused to dismiss the indictment. Third, we explain that the district court did not err when it instructed the jury on a *Pinkerton* theory of liability. Fourth, we explain that Breal has not established that the instruction to the jury on aiding and abetting warrants reversal on plain error review. Fifth, we explain that Breal has failed to establish that his sentence is substantively unreasonable.

   *A. The District Court Did Not Err When It Denied Breal's Motion to Suppress.*

   Breal argues that his inculpatory statements to the police should have been suppressed because he was not read his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966), until after he confessed, but this argument fails. Three detectives testified that Breal signed a statement waiving his rights before he revealed his role in the crimes. Breal's only contrary evidence is his own testimony, which the district court found incredible. The record supports that finding. We will disturb a credibility determination only if the credited testimony is so "inconsistent or improbable on its face that no reasonable factfinder could accept it." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (internal quotation marks omitted). In his testimony, Breal contradicted himself and asserted that, in thirteen prior arrests, he had *never* been read his *Miranda* rights. The district court did not clearly err when it found the detectives' accounts credible and Breal's testimony incredible.

*B. The District Court Did Not Err When It Refused to Dismiss the Indictment.*

Breal argues that the indictment against him for kidnapping should have been dismissed because there was insufficient evidence to convict him, but Breal misunderstands the grounds for dismissing an indictment. An indictment must present the essential elements of the offense, notify the accused as to the charges, and enable the accused to rely upon a judgment as a bar against double jeopardy. *United States v. Steele*, 178 F.3d 1230, 1233–34 (11th Cir. 1999). The district court may not dismiss an indictment based on factual insufficiency, as the sufficiency of "a criminal indictment is determined from its face."  *United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004). Because the indictment accurately quoted the language of the statute that Breal was charged with violating, 18 U.S.C. § 1201(a)(1), the indictment was sufficient.

And even if we construe Breal's brief to argue that the evidence was insufficient to prove kidnapping, his argument fails. We will not disturb a guilty verdict unless no trier of fact could have found guilt beyond a reasonable doubt. *United States v. Silvestri*, 409 F.3d 1311, 1327 (11th Cir. 2005). The evidence at trial supports the jury's finding that Breal helped others kidnap someone at gunpoint, hold the victim for ransom, and use cell phones in furtherance of the

5

kidnapping. *See United States v. Evans*, 476 F.3d 1176, 1180-81 (11th Cir. 2007) (holding that the use of a cellphone is sufficient to satisfy an element of use of interstate commerce). That evidence supports Breal's conviction.

### C. The District Court Did Not Err When It Instructed the Jury on Pinkerton Liability.

Breal argues that the court should not have instructed the jury on a *Pinkerton* theory of culpability, but this argument fails. Under the *Pinkerton* theory, a defendant can be held liable for all reasonably foreseeable offenses committed by coconspirators during and in furtherance of the conspiracy. *Pinkerton v. United States*, 328 U.S. 640, 645–48, 66 S.Ct. 1180, 1183–84 (1946). The question of foreseeability is a question for the jury, so we review only whether the evidence was sufficient for a reasonable jury to find beyond a reasonable doubt that the charged substantive offense was a reasonably foreseeable consequence of the charged conspiracy. *See United States v. Alvarez*, 755 F.2d 830, 848 (11th Cir. 1985). Because the charged conspiracy was hostage taking, the substantive offenses of hostage taking and kidnapping were foreseeable. The substantive offense of carjacking was foreseeable because the original plan involved a carjacking. And the carrying or use of a firearm during the carjacking and kidnapping of a drug dealer was reasonably foreseeable, based on the inherent dangers of the drug trade and the planned violent conduct in abducting the victim. *Cf. United States v. Pham*, 463 F.3d 1239, 1246 (11th Cir. 2006) (concluding that

6

it was reasonably foreseeable that a coconspirator would possess a firearm in conjunction with trafficking in lucrative and illegal drugs).

### D. Breal Has Not Established That the Instruction to the Jury on Aiding and Abetting Warrants Reversal on Review for Plain Error.

Breal also argues that, because Breal did not have advance knowledge that a firearm would be used, the district court should not have instructed the jury on a theory of aiding and abetting regarding the charge that he possessed or used a firearm in furtherance of a crime of violence, 18 U.S.C. § 924(c)(1)(a). We review this argument for plain error because Breal did not raise this objection in the district court. *See* Fed. R. Crim. P. 30. To be sure, when the district judge asked the parties what objections they would raise at a later charge conference, Breal stated he was "objecting to the aiding and abetting," and began to discuss *United States v. Hamlin*, which would ostensibly support his objection. 911 F.2d 551 (11th Cir. 1990). But the district judge interrupted Breal and they did not return to the subject. At charge conferences during the following two days, the district court asked Breal if he had any objections to the jury instructions in addition to his objection to the *Pinkerton* instruction. On neither occasion did Breal argue that the instructions about aiding and abetting were erroneous, much less present the "specific grounds" for the objection. *United States v. Starke*, 62 F.3d 1374, 1381 (11th Cir. 1995).

7

Breal cannot satisfy his burden under review for plain error. Breal contends that under *Rosemond v. United States*, 572 U.S. __, 134 S. Ct. 1240 (2014), aiding and abetting is relevant to crimes under section 924(c) only where the government can prove that the defendant knew in advance that a firearm would be used. Because the jury instructions did not require the government to establish Breal's advance knowledge, Breal contends that the instruction was in error. But on review for plain error, Breal must also make "a specific showing of prejudice," *United States v. Olano*, 507 U.S. 725, 735, 113 S. Ct. 1770, 1778, (1993), and he has not done so. The government presented evidence that Breal was involved in the kidnapping and knew the target was a drug dealer. Because he could reasonably foresee the use of firearms in the furtherance of that conspiracy, Breal could have been convicted under a *Pinkerton* theory. Accordingly, Breal has not established that the instruction about aiding and abetting prejudiced his "substantial rights." *United States v. Madden*, 733 F.3d 1314, 1320-21 (11th Cir. 2013).

Third, Breal contends that the district court erred when it refused to instruct the jury on multiple conspiracies and withdrawal from the conspiracy, but Breal provides no argument on this issue. And we need not address it. *See Greenbriar, Ltd. v. City of Alabaster,* 881 F.2d 1570, 1573 n. 6 (11th Cir.1989) (because a passing reference to an issue is insufficient to preserve the issue for appeal, that issue is deemed abandoned).

8

*E. Breal Has Failed to Establish That His Sentence Is Substantively Unreasonable.*

Finally, Breal argues that his sentence is substantively unreasonable because it is unreasonably disparate from the sentences imposed on his coconspirators, *see* 18 U.S.C. § 3553(a)(6), but this argument fails. Although Breal contends that his sentence was 13 years longer than the longest sentence imposed on any of his coconspirators, Breal cannot establish that he was similarly situated to the defendants who received lesser sentences. *See United States v. Docampo*, 573 F.3d 1091, 1101 (11th Cir. 2009). Breal presented no evidence that he and his coconspirators were similarly situated or had comparable records. And Breal fails to acknowledge that his coconspirators pleaded guilty. *Cf. Id.* ("[D]efendants who cooperate with the government and enter a written plea agreement are not similarly situated to a defendant who provides no assistance to the government and proceeds to trial.") Breal has not established that his sentence is substantively unreasonable.

## IV. CONCLUSION

We **AFFIRM** Breal's convictions and sentence.

9